# UNITED STATES DISTRICT COURT

Southern    District of    New York

TIMOTHY LOONEY,
Plaintiff,

V.

LONGVIEW FUND, L.P., and
ALPHA CAPITAL ANSTALT,

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER: 08 CV 01069

Judge McMahon

TO: (Name and address of Defendant)

Longview Fund, L.P.
1325 Howard Avenue, #422,
Burlingame, California 94010

Alpha Capital Anstalt
Pradafant 7, Furstentums 9490,
Vaduz, Liechtenstein

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

HAYNES AND BOONE, LLP
Jason A. Nagi
153 East 53rd Street
Suite 4900
New York, New York 10022

an answer to the complaint which is served on you with this summons, within ___twenty (20)___ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON    FEB 0 1 2008

CLERK    DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[(1)] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

**DECLARATION OF SERVER**

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                  Date            *Signature of Server*

                                      _____
                                      *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



HAYNES AND BOONE, LLP
*Attorneys for Plaintiff*
*Timothy Looney*
153 East 53rd Street, Suite 4900
New York, New York 10022
Telephone: (212) 659-7300
Jason A. Nagi (JN 6891)
Marty L. Brimmage, Jr.
(Admission Pending)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY LOONEY,<br><br>Plaintiff,<br><br>- against -<br><br>LONGVIEW FUND, L.P., and<br>ALPHA CAPITAL ANSTALT,<br><br>Defendants. | 08 Civ.<br><br>**COMPLAINT** |

Plaintiff Timothy Looney ("Looney"), by his attorneys, Haynes and Boone, LLP, for his Complaint, alleges:

## THE PARTIES

1. Looney is an individual residing in the State of Texas.

2. Longview Fund, L.P. ("Longview") is a California limited partnership with its principal place of business at 1325 Howard Avenue, #422, Burlingame, California 94010.

3. Alpha Capital Anstalt ("Alpha") is a foreign entity with its principal place of business at Pradafant 7, Furstentums 9490, Vaduz, Liechtenstein.

## NATURE OF THE ACTION

4. In 2005, Looney was the sole shareholder of Optex Systems, Inc. ("Optex"). At the end of 2005, Looney sold all of his shares in Optex to Irvine Sensors Corporation ("Irvine"),

a publicly traded corporation, for cash and shares in Irvine. Under the agreement, Irvine was required to prepare and file a Registration Statement registering Looney's Irvine shares with the United States Securities and Exchange Commission. Irvine failed to register Looney's Irvine shares. Instead, Irvine entered into an agreement with Longview, Alpha and others that contractually and indefinitely prohibited Irvine from filing *any* registration statement, including one regarding Looney's shares.

5. In January 2008, Looney commenced legal an action against Irvine in Orange County, California (as required by the forum selection clause in the agreement with Irvine) that asserts claims against: i) Irvine for specific performance and breach of contract for Irvine's failure to obtain an effective Registration Statement covering Looney's Irvine shares; and ii) Longview and Alpha for knowingly and tortiously interfering with Looney and Irvine's contractual agreement (the "California Action").

6. Longview and Alpha now contend that any claims against them must be brought in New York as the result of an unrelated Subordination Agreement which concerns payment of a $400,000 note. Irvine's contractual obligation to register Looney's shares, and Longview and Alpha's duty to not tortiously interfere with those contractual obligations, are entirely independent of the rights and obligations under the Subordination Agreement. Thus, Looney now seeks declaratory relief from this Court that the Subordination Agreement does not prevent Looney from seeking the relief sought against Longview and Alpha in the California Action.

## JURISDICTION AND VENUE

7. This action seeks declaratory relief pursuant to 28 U.S.C. § 2201.

8. This Court has jurisdiction pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship between the parties and this action seeks declaratory relief permitting plaintiff to seek damages from defendants in excess of $75,000.00.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because defendants are subject to personal jurisdiction in this district and there is no other district in which this action may otherwise be brought.

## FACTUAL BACKGROUND

Optex Systems, Inc.

10. In 1987, Optex was founded by Looney and others as a privately held Texas corporation specializing in the manufacture of optical sighting systems and assemblies primarily for U.S. Department of Defense applications.

11. Optex was originally comprised of one active partner, Looney, and four passive investors. In 2003, Looney bought out each of the investors, acquiring 100 percent of the company.

12. In January 2005, Looney began to investigate a sale of Optex. On September 25, 2005, Irvine submitted a letter of intent to Looney to purchase Optex.

The Irvine Transaction

13. On December 30, 2005, Looney and Irvine entered into a Stock Purchase Agreement (the "SPA") pursuant to which Looney agreed to sell and Irvine agreed to buy all of the outstanding capital stock of Optex in a two-step transaction. (A true and correct copy of the SPA is annexed as Exhibit A and is incorporated by reference in this complaint.)

14. First, Irvine immediately acquired 70 percent of the outstanding stock in Optex for a cash purchase price of $14.0 million. Second, pursuant to the terms of a Buyer Option Agreement (the "BOA"), dated December 30, 2005, Irvine agreed (under certain conditions) to acquire the remaining 30 percent of Optex's outstanding capital stock in exchange for $7 million worth of Irvine stock (equivalent to 2,692,307 Irvine shares) issued to Looney (the "Looney

3

Shares").[1]  (A true and correct copy of the BOA is annexed as Exhibit B and is incorporated by reference in this complaint.)

15. Among other things the BOA permits the parties to seek specific performance and injunctive relief to prevent breaches. The BOA states:

> Specific Performance. Each of the parties acknowledges and agrees that the subject matter of this Agreement, including the business, assets and properties of the Company, is unique, that the other parties would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached, and that the remedies at law would not be adequate to compensate such other parties not in default or in breach. Accordingly, each of the parties agrees that the other parties will be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions of this Agreement in addition to any other remedy to which they may be entitled, at law or in equity[.]

(Ex. B, § (f).)

16. In addition, the BOA designates Orange County, California as the exclusive forum for litigating disputes concerning the BOA. The BOA states:

> Jurisdiction. Each of the parties submits to the exclusive jurisdiction of any state or federal court sitting in Orange County, California, in any action or proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court.

(Ex. B, § (g).)

17. Pursuant to the BOA, Looney and Irvine entered into a Registration Rights Agreement (the "RRA") dated December 30, 2005. In the RRA, Irvine promised to prepare and file with the United States Securities and Exchange Commission ("SEC") a Registration

---

[1] The stock exchange was based on a per share price of $2.60 for the Irvine stock.

4

N-12762_7.DOC

Statement covering the resale of the Looney Shares pursuant to the BOA. (A true and correct copy of the RRA is annexed as Exhibit C and is incorporated by reference in this complaint.)

18. In the RRA, Irvine pledged to use "its commercially reasonable best efforts to cause such Registration Statement to be declared effective under the Securities Act as soon as reasonably practicable but, in any event, no later than its Effectiveness Date," which was the 120th day following the BOA closing date. (Ex. C, § 2(a)). The RRA further states:

> Governing Law. All questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of California, without regard to the principles of conflicts of law thereof. Each party agrees that all Proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Agreement (whether brought against a party hereto or its respective Affiliates, employees or agents) will be commenced in the Orange County Courts. Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the Orange County Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any Proceeding, any claim that it is not personally subject to the jurisdiction of any Orange County Court, or that such Proceeding has been commenced in an improper or inconvenient forum.

(Ex. C, § (j).)

19. In June 2006, Irvine's shareholders approved Irvine's exercise of the BOA and the issuance of the Looney Shares. Nevertheless, the BOA was not formally exercised until December 29, 2006, thereby triggering the 120-day countdown for the Effectiveness Date under the RRA and requiring the Registration Statement concerning the Looney Shares be declared effective by April 30, 2007.

20. In the meantime, by July 2006 Irvine had fully drawn down on its $2 million line-of-credit with its senior bank lender and was in default under the terms of that line-of-credit. Irvine's 10-Q filed with the SEC for the quarter ending July 2, 2006 (the "2Q-06 Results") states:

5

> In August 2006, our senior bank advised us that we were in non-compliance with a debt service ratio covenant under our loan and security agreement with such bank. As a result of such non-compliance, we were advised that the bank would not extend further credit on our $2 million revolving line-of-credit while such non-compliance remained in effect. At July 2, 2006, our revolving line-of-credit was fully drawn to its $2 million limit. The bank did not elect to accelerate our obligations under our line of credit or under our Term Loan, but did indicate that it would likely require us to raise $3.0 million of additional equity or subordinated debt financing to pay down $2 million of the Term Loan and to restrict use of $1 million of our cash until such time as we could fully comply with our debt covenants.

(A true and correct copy of relevant portions of the 2Q-06 Results is annexed as Exhibit D and is incorporated by reference in this complaint.)

21.  Based on this financial default and others, Pequot Private Equity Fund III, L.P. and Pequot Offshore Private Equity Partners III, L.P. (collectively referred to herein as "Pequot"), which financed Irvine's acquisition of Optex through subordinated secured convertible notes, served an "event notice" giving Irvine notice of default.

22.  Due to Irvine's defaults and loss of its revolving line of credit, Irvine sought additional capital and entered into a financing agreement with two entities—Longview and Alpha.[2]

23.  In addition, on December 29, 2006, Looney agreed to relieve Irvine of certain obligations regarding the sale of the Looney Shares in the BOA. As such, Looney and Irvine entered into an Amendment to Buyer Option Agreement ("ABOA"), and a $400,000 Unsecured, Subordinated Promissory Note that matured December 29, 2007 (the "$400,000 Note"). (A true and correct copy of the ABOA is annexed as Exhibit E and is incorporated by reference in this

---

[2] In conjunction with this transaction, Pequot assigned its subordinated secured convertible notes to Longview and Alpha.

complaint; a true and correct copy of the $400,000 Note is annexed as Exhibit F and is incorporated by reference in this complaint.)

24. The $400,000 Note states as follows:

> Notwithstanding anything contained herein that may be to the contrary, the payment of this Note and the rights and remedies of [Looney] and any other holder of this Note under this Note are subordinate to the payment of the Senior Debt, as defined in that certain Subordination Agreement of even date herewith, among [Looney], Longview Fund L.P. and Alpha Capital Anstalt, and are otherwise subject to such Subordination Agreement

(Ex. F, §6.)

25. In conjunction with the $400,000 Note, Looney, Longview and Alpha entered into a Subordination Agreement, dated December 29, 2006 (the "Subordination Agreement") which subordinated Looney's claims under the $400,000 Note to those of Longview and Alpha. (A true and correct copy of the Subordination Agreement is annexed as Exhibit G and is incorporated by reference in this complaint.)

26. The Subordination Agreement defines "Subordinated Debt" as "all of Borrower's indebtedness and obligations to Creditor evidenced by that certain Unsecured Subordinated Promissory Note of even date herewith in the principal amount of $400,000, executed by Borrower, payable to the order of [Looney]." (Ex. G, §C.)

27. Concerning the Subordinated Debt, the Subordination Agreement states that Looney "must deliver to [Longview and Alpha] in the form received ... any payment, distribution, security or proceeds it [sic] receives *on the Subordinated Debt* other than according to this Agreement." (*Id.* at § 4) (emphasis added).

28. Concerning the Subordinated Debt Looney agreed not to "accelerate the Subordinated Debt, or begin to or participate in any action against [Irvine], until all the Senior Debt is indefeasibly paid." (Ex. G, § 3(c).)

29.     Concerning disputes under the Subordination Agreement, the parties agreed that "New York law governs this Agreement without giving effect to conflicts of laws principles. [Looney] and [Longview and Alpha] submit to the exclusive jurisdiction of the County, City and State of New York."

Irvine's Bad Faith Default

30.     Because the ABOA set the Option Closing Date as December 29, 2006, pursuant to § 2(a) of the RRA, Irvine was required to obtain an effective Registration Statement covering the Looney Shares within 120 days or not later than April 30, 2007.

31.     Despite Looney's best efforts to accommodate Irvine, Irvine has failed to fulfill its contractual obligations to register the Looney Shares. As a result, Looney has been unable to trade and monetize any of those shares.

32.     Initially, Irvine was unable to register the Looney Shares because it was not current with its reporting requirements to the SEC. Notwithstanding the additional capital received from Longview and Alpha, in January 2007, Irvine requested and Looney agreed to personally loan Optex $2 million to assist Irvine in curing its SEC reporting deficiencies. This loan by Looney cleared the way for Irvine to file its Form 10-K with the SEC and to proceed with the preparation and filing of a Registration Statement covering the Looney Shares.

33.     On or about February 7, 2007, Irvine filed a Form S-1 Registration Statement (the "Looney Registration Statement") with the SEC which covered not only the Looney Shares, but also shares of Irvine stock that had been issued to other entities including Longview, Alpha, and Pequot. Irvine was promptly notified by the SEC that the Looney Registration Statement was flawed. On or about February 28, 2007, the SEC sent a letter to Irvine detailing issues that needed to be corrected for the Looney Registration Statement to be effective.

8

34. None of the deficiencies described by the SEC related to the Looney Shares. Indeed, all of the SEC's comments concerned the "non-Looney" shares of Irvine stock, which had inexplicably been included by Irvine in the Looney Registration Statement and which obfuscated and delayed the registration of the Looney Shares. Irvine failed to resolve these issues with the SEC, and, on April 18, 2007, the SEC sent Irvine another letter outlining further concerns with respect to the "non-Looney" shares.

35. Recognizing that the problematic issues related to the other entities appeared to be complex and time-consuming, Looney's counsel contacted Irvine on multiple occasions requesting that Looney's shares be registered separately. To date, Irvine has rejected these requests and has not resolved the SEC's concerns over the "non-Looney" shares set forth in the Looney Registration Statement.

Bad Faith Interference With Looney's Stock Registration Rights

36. To make matters worse, on November 28, 2007, Irvine entered into the Registration Rights Purchase Agreement, Consent and Waiver ("RRPACW") with Longview, Alpha, Jolie G. Kahn ("Kahn"), and Barbara R. Mittman ("Mittman"). (A true and correct copy of the RRPAWC is annexed as Exhibit H and is incorporated by reference in this complaint.) In consideration of Irvine's payment of $1 million to Longview and $115,000 to Alpha, and other consideration to Kahn and Mittman, Irvine was relieved of its obligation to register shares owned by or issuable to Longview or Alpha pursuant to previous financing documents. (Ex. H, § 2.)

37. Significantly, however, Irvine also promised that it would not, without the prior written consent of Longview and Alpha, "file any registration statement with the SEC or state regulatory authorities until the end of the Exclusion Period." (*Id.* § 5.) The prohibition against registration of stock includes the Looney Shares.

N-12762_7.DOC

38. The Exclusion Period for the registration of stock runs indefinitely, i.e., until 180 days after the shares owned by Longview, Alpha, Kahn and Mittman can be sold without restriction. (*Id.*) Thus, by entering into the RRPACW, Longview and Alpha expressly required Irvine to breach its contractual obligations to Looney under the RRA.

39. Longview and Alpha negotiated this prohibition against registration in the RRPACW with the full knowledge of Irvine's "obligations to register or qualify the shares of the Company's common stock held by Looney under that certain Registration Rights Agreement dated December 30, 2005[.]" (*Id.* § 8.) Indeed, Longview and Alpha acknowledged Looney's previous written notice to Irvine that the company is in default regarding its obligation to register the Looney Shares. (*Id.*)

The California Action

40. Looney has been and continues to be injured and harmed by Irvine's defaults under the RRA and the ABOA, and Longview and Alpha's conduct which intentionally prohibits Irvine from filing any Registration Statements that seek to register Looney's shares. Therefore, on or about January 11, 2008, Looney commenced an action against Irvine, Longview and Alpha in the Superior Court of California, Orange County, Central Justice Center, captioned *Looney v. Irvine Sensors Corp., et al.*, 30-2008-101264 (the "California Action"). (A true and correct copy of the California Action, without exhibits, is annexed as Exhibit I and is incorporated by reference in this complaint.) The California Action seeks, *inter alia*, specific performance of the RRA, injunctive relief directing Irvine to register the Looney Shares, damages for Irvine's breach of the RRA, and damages based on Longview and Alpha's tortious and negligent interference with Looney's rights to receive the benefits of the RRA.

41. By letter dated January 16, 2008, counsel to Longview and Alpha claimed that the California Action was prohibited by the Subordination Agreement. (A true and correct copy of

the letter is annexed as Exhibit J and is incorporated by reference in this complaint.) Specifically, the letter claims: (i) that the Subordination Agreement prohibits Looney from initiating any action against Irvine, including the California Action; and (ii) that the Subordination Agreement requires any action Looney may have against Longview or Alpha to be brought in New York, even if such dispute does not concern the Subordination Agreement.

42. Based on Longview and Alpha's letter Looney commenced this action seeking declaratory relief.

### Claim For Declaratory Relief

43. Plaintiff repeats the allegations contained in the previous paragraphs of the Complaint as if fully set forth herein.

44. This is a petition for a Declaratory Judgment brought pursuant to 28 U.S.C. § 2201, the declaratory judgment being sought for the purpose of determining a question in actual controversy between the parties—i.e. that the Subordination Agreement does not prohibit Looney from prosecuting the California Action and that the Subordination Agreement only provides for exclusive jurisdiction in New York for disputes concerning the Subordination Agreement.

45. The California Action seeks specific performance, injunctive relief and damages for breach of contract against Irvine, and damages against Longview and Alpha for intentional and negligent interference with Looney's rights to have his shares registered under the RRA.

46. Longview and Alpha allege that the Subordination Agreement prohibits Looney from initiating any action against Irvine, including the California Action.

47. Longview and Alpha allege that the Subordination Agreement requires Looney to bring any action he may have against Longview or Alpha, in New York, even if such action does not concern the Subordination Agreement.

48. Plaintiff now seeks judicial review and a declaratory judgment that:

   a) the Subordination Agreement does not prohibit Looney from prosecuting the California Action;

   b) the Subordination Agreement only requires exclusive jurisdiction in New York when the terms of that agreement are disputed; and

   c) the California Action does not involve or dispute any terms of the Subordination Agreement.

49. As described above, the controversy between the parties is real.

50. A judgment of this Court in this action will serve a useful purpose in clarifying and settling the legal dispute between the parties.

51. A judgment of this Court in this action will determine, terminate and afford relief from uncertainty, insecurity, and the controversy giving rise to this action.

**WHEREFORE**, Looney respectfully requests that he be granted the relief he seeks as follows:

   (A)   a declaratory judgment as requested above;

   (B)   an award of his costs and attorneys' fees for this action; and

    (C)    such other and further relief, at law or in equity, as this Court may deem just and proper.

Dated: January 31, 2008

                                 HAYNES AND BOONE, LLP
                                 *Attorneys for Plaintiff*

                                 By: /s/ Jason A. Nagi
                                 Jason A. Nagi (JN-6897)
                                 Marty L. Brimmage, Jr.
                                 (*Admission Pending*)
                                 153 East 53rd Street, Suite 4900
                                 New York, New York 10022
                                 (212) 659-7300

N-12762_7.DOC